## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

TYLER D. MALINSKI,                              )
                              )
              **Plaintiff,**            )
                              )
and                                             )
                              )
PAULA SMITH,                                    )
                              )
             **Intervenor,**           )
v.                                              )          **Case No. 15-CV-502-JED-FHM**
                              )
BNSF RAILWAY COMPANY,                           )
                              )
             **Defendant.**            )

## OPINION AND ORDER

Before the Court are defendant BNSF Railway Company's ("BNSF") *Daubert* Motion Regarding Plaintiff's Expert, Dr. Adam Sherman (Doc. 38) and BNSF's *Daubert* Motion Regarding Plaintiff's Expert, Steve Lett (Doc. 45). Both motions seek to exclude expert opinion testimony pursuant to the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Plaintiff timely responded to both motions, and BNSF filed its replies.[1]

The most common method to assess a *Daubert* motion is by conducting a *Daubert* hearing, although a hearing "is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). Here, neither party has indicated that such a hearing is necessary. After careful review of the motions and exhibits, the Court believes a hearing is not required in this case.

---

[1] As the parties refer to the opinions of Dr. Sherman and Mr. Lett in their summary judgment briefing, the Court addresses the *Daubert* motions before considering BNSF's summary judgment motion.

## I.       Background

Defendant BNSF removed this case on August 28, 2015.  (Doc. 2).   Plaintiff's lawsuit seeks recovery from BNSF for personal injury damages he sustained from a motor vehicle accident between his vehicle and a train owned and operated by BNSF.  Plaintiff alleges that BNSF failed to protect the grade crossing by using automatic signaling devices, flashing lights, or crossing guards, and that such failure amouns to negligence.  Plaintiff further alleges that BNSF's negligence was the proximate cause of the collision, which left plaintiff permanently partially disabled.  (Doc. 4-4 at 2).   On December 5, 2016, the Court allowed intervention by Paula D. Smith, the mother of the passenger in plaintiff's vehicle who died shortly after the accident.  (Doc. 109).

## II.      Legal Standards Governing Expert Testimony

Rule 702 of the Federal Rules of Civil Procedure governs the admissibility of expert testimony.  The rule provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)      the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)      the testimony is based on sufficient facts or data;
>
> (c)      the testimony is the product of reliable principles and methods; and
>
> (d)      the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 597 (1993), the Supreme Court held that the rule requires the district courts to act as gatekeepers and

ensure that scientific expert testimony is relevant and reliable.  An expert's opinion must be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. The applicability of *Daubert* was later expanded to apply to the opinions of all experts, not just scientific experts. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) ("We conclude that *Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.").

In *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit rehearsed the two-part inquiry undertaken by district courts when considering a *Daubert* challenge.  First, the court must determine whether "the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his [or her] discipline.'"  400 F.3d at 1232-33 (quoting *Daubert*, 509 U.S. at 592).  This involves "conducting a preliminary inquiry into the expert's qualifications and the admissibility of proffered evidence."  *Id.* at 1233.  An impermissible analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under *Daubert*.  *See id.*; *see also Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005).  "Neither *Daubert* nor the Federal Rules of Evidence 'require[ ] a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'"  *Norris*, 397 F.3d at 886 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

The Supreme Court set forth several non-exclusive factors that a court may consider in determining whether proposed expert testimony will assist the trier of fact: (1) "whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) the "known or potential rate of error" of a technique; and (4) whether the theory or technique has "general acceptance," which is an important consideration because "'a

known technique which has been able to attract only minimal support within the community' may properly be viewed with skepticism." *Daubert*, 509 U.S. at 593-94.  The inquiry into these factors is "a flexible one," and the focus is "on principles and methodologies, not on the conclusions that they generate." *Id.* at 593.

Under the second part of the *Daubert* analysis, the court must ensure that the proposed testimony is relevant.  *Bitler*, 400 F.3d at 1234 (quoting *Daubert*, 509 U.S. at 597).  "A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Id.*

Importantly, while an expert opinion "'must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation . . .  absolute certainty is not required.'"  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995)).  The district court may properly allow expert testimony that is allegedly inadequate or incomplete "provided the inadequacies are known to the defendant in order to thoroughly cross-examine the witness." *Hertz Corp. v. Gaddis-Walker Elec., Inc.*, 125 F.3d 862 (10th Cir. 1997) (citing *Firestone Tire & Rubber Co. v. Pearson*, 769 F.2d 1471, 1482-83 (10th Cir. 1985)); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination . . . [is] the traditional and appropriate means of attacking shaky but admissible evidence.").

## III. Discussion

For the reasons discussed in the Court's March 9, 2017 Order (Doc. 127), BNSF's arguments regarding plaintiff's alleged failure to comply with discovery deadlines are moot.  The Court thus confines its analysis to the remaining issues presented in the motions.

**A. Defendant's *Daubert* Motion Regarding Plaintiff's Expert, Dr. Adam Sherman (Doc. 38)**

BNSF's Motion argues that plaintiff's expert, Dr. Adam Sherman, should be prevented from testifying at trial under Fed. R. Evid. 702 and *Daubert*.  BNSF has moved to strike Dr. Sherman as an expert because his pre-determined opinion employed improper methodology and is not supported by sufficient evidence.  (Doc. 38 at 7-9).  In response, plaintiff argues that BNSF's objections are argumentative and are more properly evaluated on cross-examination. (Doc. 65 at 2).

As BNSF raises no issue regarding Dr. Sherman's qualifications, the Court focuses its attention on the reliability of his expert opinion diagnosing plaintiff with a traumatic brain injury ("TBI") and posttraumatic stress disorder ("PTSD").  (Doc. 38, Exhs. 1-2).  BNSF challenges Dr. Sherman's methodology, arguing that he concluded plaintiff suffered from TBI and PTSD in his preliminary report without ever meeting plaintiff, and subsequently conducted testing "to support his opinions."  BNSF also argues that the evidence obtained by Dr. Sherman failed to support his opinions.  (Doc. 38 at 7).

The Court concludes that Dr. Sherman's methodology is sufficiently reliable under *Daubert*.  Dr. Sherman's May 6, 2016 letter contained his "initial clinical impressions" based on medical records and sought to help identify "further treatment/evaluation options that would be appropriate for Mr. Malinski."  (Doc. 38, Exh. 1).  Dr. Sherman stated that "the records surrounding Mr. Malinski's accident clearly indicates that he sustained a traumatic brain injury," but recommended plaintiff undergo a comprehensive neuropsychological evaluation to identify any residual deficits resulting from TBI.  (*Id.* at 2).  Dr. Sherman's review of the same records "provide[] sufficient trauma to prompt a PTSD," and he again recommended a formal evaluation to  assess any additional psychological injuries (*Id.*).  On May 28, 2016, Dr. Sherman conducted

a clinical interview and mental status evaluation with plaintiff and his parents, and completed formal testing. Dr. Sherman's Neurophysicological Report reflects the results of his observations and testing, in addition to his review of medical records associated with the accident in December 2014 and progress notes from Dr. Tyrell from June 2015.  (Doc. 38, Exh. 2 at 1, 3). Based on the results, Dr. Sherman concluded that "this would appear to be the special case in which diagnosis of both TBI and PTSD are appropriate and valid." (*Id.* at 7).

The Court does not find that Dr. Sherman's methodology was improper.  It is clear that Dr. Sherman's diagnoses were based upon the medical records provided to him as well as his own testing, which is proper under *Daubert* and Rule 702. *See Dodge*, 328 F.3d at 1222 (expert opinions must be based on facts in order to be admissible).  Importantly, BNSF provides no relevant law that it is improper for an expert to provide initial impressions based on the medical records, and to later confirm these impressions after conducting clinical interviews and his own testing.[2]   Moreover, the Court is unpersuaded by BNSF's arguments that Dr. Sherman's conclusions lack support from his testing and "the contravening facts of Plaintiff's life" and are thus "unsupported speculation."  (Doc. 38 at 9).  These arguments are merely challenges to the factual bases for Dr. Sherman's diagnoses of TBI and PTSD, which BNSF may attack by cross-examination at trial. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination . . . [is] the traditional and appropriate means of attacking shaky but admissible evidence.").  Further, these

---

[2] The case cited by BNSF in support of its argument that Dr. Sherman's proffered expert testimony should be excluded for improperly utilizing a "conclusion first, testing later" methodology, *Claar v. Burlington N. R. Co.*, 29 F.3d 499 (9th Cir. 1994), is distinguishable from this case. Unlike Dr. Sherman, the experts in *Clarr* "formed their opinions before reading the relevant literature, even though they admitted that they were not sufficiently familiar with the field to diagnose the causes of plaintiffs' injuries without first reviewing that literature." *Id.* at 502.  The Ninth Circuit thus concluded that there was no scientific method to support the experts' opinions.  By contrast, Dr. Sherman reviewed all the relevant medical records provided to him prior to reaching his initial conclusion.

issues go to the weight of an expert's testimony rather than to its admissibility.  *See, e.g.*, *Tingey v. Radionics*, 193 F. App'x 747, 767 (10th Cir. 2006) (unpublished) ("'[D]isputes as to the strength of [an expert's] credentials, faults in his . . . methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility of his testimony.").

BNSF's *Daubert* Motion Regarding Plaintiff's Expert, Dr. Adam Sherman (Doc. 38) is thus **denied**.

### B.   Defendant's *Daubert* Motion Regarding Plaintiff's Expert, Steve Lett (Doc. 45).

BNSF seeks to exclude the opinion testimony of plaintiff's liability witness, Steve Lett, pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert*.  Mr. Lett's engineering study opines that plaintiff did not have enough sight distance to see the oncoming train because BNSF did not properly maintain the right-of-way.  (Doc. 45, Exh. 1 at 4).  First, BNSF argues that Mr. Lett is not qualified as an expert because he has no experience with railroad crossings or accidents that have taken place at railroad crossings.  (Doc. 45 at 3-4).  Second, BNSF contends that Mr. Lett's opinions are not supported by his own measurements, photographic evidence, plaintiff's testimony, and regulations regarding sight distances at railroad crossings.  (*Id.* at 4).

BNSF argues, without supporting any case law, Mr. Lett's lack of experience related to railroad crossings is dispositive as to his qualifications as an expert in this case.  However, the Tenth Circuit has stated that "firsthand knowledge is not requisite to the admissibility of an expert opinion," and is more relevant to the weight of the expert's opinion instead of its admissibility.  *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000) (concluding that district court properly determined experts were qualified despite their lack of experience with the particular machines at issue in the case); *see also Lovato v. Burlington N. & Santa Fe Ry. Co.*, 2002 WL 1424599, at *4 (D. Colo. June 24, 2002) (finding that expert's "lack of

professional experience with the railroad industry is not dispositive as to the issue of his qualifications to serve as an expert in this case").

The Court concludes that Mr. Lett's lack of knowledge specific to railroad crossings does not bar him from testifying in this case.  Mr. Lett is a civil engineer and the current CEO of Tri-State Engineering with years of experience in structural, civil, environmental, and construction engineering.  (Doc. 45, Exh. 1, at 9).  His resume indicates that he was Vice President of a general contracting firm that worked on transportation projects, and also served as a project engineer on projects including "roads and site development." (*Id.*).  Further, Mr. Lett has testified as an expert witness in over 100 cases, including construction-related matters.  (*Id.*).

Based on the above, the Court concludes that Mr. Lett's education and vast work experience adequately qualify him for the issues to which he intends to testify, specifically regarding maintenance of BNSF's right-of-way and visibility at the crossing.  *See* Fed. R. Evid. 702(e).  Contrary to BNSF's assertion, the fact that Mr. Lett lacks experience related specifically to railroad crossings is not an automatic bar to his qualifications to testify as an expert in this case.  Such attacks are more relevant to the weight the jury may give to his opinion.  *See Smith*, 214 F.3d at 1244.  Moreover, the Court finds that Mr. Lett's knowledge will help the trier of fact in determining whether BNSF is liable and that his opinion states more than simply lay observations.

Further, the Court rejects BNSF's challenges to the factual bases of Mr. Lett's opinion.  Specifically, Mr. Lett based his opinion on his review of BNSF locomotive videos, photos from seven different sources, the Oklahoma traffic collision report, the Manual on Uniform Traffic Control Devices, the Federal Highway Administration's Railroad-Highway Grade Crossing Handbook, the American Association of State Highway and Transportation Officials' Policy on

Geometric Design of Highways and Streets, the Oklahoma Highway Patrol investigating trooper's report, Okla. Stat. tit. 47, § 47-11-701, and a site visit conducted on April 21, 2015. BNSF first contends that Mr. Lett's opinion regarding sight distance is undermined by his own finding that plaintiff's sight distance was 742 feet when he was stopped 50 feet from the railroad track, when Oklahoma law only requires a sight distance of 250 feet when a vehicle is 50 feet from a railroad track. (Doc. 45 at 4-5). Next, BNSF cites to photos, plaintiff's deposition testimony, BNSF's locomotive video, and the report of its own expert, Jay Pfeiffer, to argue that Mr. Lett's opinion is not supported by record evidence. (*Id.* at 5-7). In response, plaintiff points out that BNSF's argument omits the portion of Mr. Lett's opinion that concludes plaintiff's sight distance was restricted by trees and brush on the right-of-way, and that arguments concerning the weight of evidence are not sufficient to exclude expert testimony under the federal standards. (Doc. 68 at 2-3). The Court concludes that BNSF's factual challenges go to the weight to be afforded to Mr. Lett's opinion and are more properly raised during cross-examination at trial. *See Daubert*, 509 U.S. at 596.

Accordingly, BNSF's *Daubert* Motion Regarding Plaintiff's Expert, Steve Lett (Doc. 45) is **denied.**

**IT IS THEREFORE ORDERED** that BNSF's *Daubert* Motion Regarding Plaintiff's Expert, Dr. Adam Sherman (Doc. 38,) and BNSF's *Daubert* Motion Regarding Plaintiff's Expert, Steve Lett (Doc. 45) are **denied**.

**SO ORDERED** this 31st day of March, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE